Counsel, Tom Warren for PhotoMedex. Nice to see you again. It's been a long time. How have you been? Yes, indeed. I haven't seen you for a while. Yes, indeed. It's been nice. There are some statute of limitations arguments in this case which are sort of the most challenging, and I'd like to address those issues first. Of all of the claims that are asserted, and Your Honors may recall that what happened in this second action is that the second action was actually filed by Raw Medical in this case, and after it was removed to a federal court, there was a counterclaim that was filed by my clients asserting a variety of causes of action. Of the five causes of action that were asserted in the counterclaim, there was a motion that made to dismiss four of them, but not the fifth, Torsh's Interference Claim, which I think is important, and we'll come back to that. Of those four claims, unfair competition, misappropriation, Lanham Act claim, and false advertising claim, the unfair competition claim issue is the easy one, so I'd like to start there. Under 17-200, there is a four-year statute of limitations for an unfair competition claim, not the three-year one that's associated with a misappropriation claim. The district court in this case found that the approval date was in 2003. The complaint, this complaint was filed in 2006, so it fell well within the four-year statute of limitations. Raw Medical concedes that the district court's use of the misappropriation statute of limitations as opposed to the unfair competition statute of limitations was error, so by virtue of that, there is no basis upon which the district court could have dismissed the unfair competition claim on statute of limitations grounds. With respect to the Lanham Act claim, we would submit that it is a parallel claim to the unfair competition claim and should proceed as well under that analogous state statute. The alternative argument, of course, is that it is more analogous to the false advertising claim, and there is some confusion among the lower courts as to whether or not there is a three- or a four-year statute of limitations for a false advertising claim. We would submit that it was inappropriate to dismiss those claims as well on statute of limitations grounds. We've got a three-year statute. Why was the district judge wrong in looking at that earlier state court suit that was filed that was basically arguing misappropriation? I mean, more than basically, that was one of the causes of action. Well, with respect to the false advertising and Lanham Act claims, we would submit it was wrong because of the continuing violations doctrine, and there are allegations in the complaint that these misrepresentations were not simple. I'm after the misappropriation. Okay. If we go back to the misappropriation claim. So we've got a misappropriation claim. Let's assume we've got a three-year statute of limitations. You filed suit in state court in 2003 alleging misappropriation, and you back off of that. When you lose summary judgment on three out of your five claims, and then you take a voluntary dismissal shortly before trial as to both your misappropriation and your unfair competition. Right. But you clearly had enough when you brought that suit to suspect misappropriation because that's your cause of action. Absolutely. We did have some. So the district judge looks at that and says, well, you know, it's new or should have known of the cause of action, new or should have suspected cause of action. You clearly suspected gains over. You lose on that one on statute of limitations. Why was the district judge wrong? Well, I guess there are two approaches to take a look at that. The first one is you've got issues of the date of accrual, and you've got issues of the tolling of the accrual. Let's talk about the first one. Of course, we filed on this because there was a suspected misappropriation and were required under the statute to file based upon suspected misappropriation. Remember, the representation here by Raw Medical is that there is no laser. And Mr. Irwin, who funds the company, says this thing is still in the design phase. You've got nothing. There's no laser to look at. There are no design specs to look at. There's no misappropriation. Now, it may well be that. How is misappropriation defined? It's not defined merely as used. It's defined as taken, correct? Right, but when the trade secrets are up here in your company. I thought you said there was a little diskette or a cassette or something that you found out there was almost like trade secret, here it is kind of thing. Right, but all of that disk was recovered. So as a result of that, what was left of the misappropriation claim was that Mr. Irwin, the ostensible. So you're saying you didn't know exactly what was misappropriated, but you knew something was misappropriated. We suspected he was misappropriating. He said there's nothing yet. You're premature. There's nothing to discover. There's nothing to look at. Okay. Well, if there's nothing to discover, there's nothing to look at, there's no misappropriation. I would submit that there's no accrual because, yes, we have to bring a claim based upon suspected misappropriation. But if a claim is premature. But the California statute refers to either improper, in quotes, acquisition or disclosure or use. Right. So acquisition, that doesn't really fit with what you're talking about with this kind of an ongoing development. Well, I mean, we have to look at this within the context of who Mr. Irwin is. His trade secrets are in his head. And so when he goes to form a. . . He really needs the drawings. He really needs the formula. He really needs the diskette. So somebody clearly is carrying his head. Right. But if he's carrying some of his head, but if he's really going to make use of it, he goes back and he steals it out of the file. Right. That strikes me right there as misappropriation when he takes the diskette and takes it home. Right. Although those aspects of the claims that we brought ultimately were not the basis of the misappropriation claim that was later brought because the diskette was recovered and ultimately the documents were not taken. So we had suspect. . . There were no files taken? I thought there were some files taken. I know the diskette was found in the parking lot. Right. But there are no files taken? My understanding is through the discovery process, it was. . . And I don't want to misrepresent, but it was. . . It was not. . . They came to the conclusion that the documents, to the extent there were documents taken, that they did not constitute a trade secret violation. If a trade secret violation came, then ultimately the trade secret violation, misappropriation in the cause of action that was asserted at a later time, came from the body of knowledge that Mr. Irwin had in his head. And I would submit to the court that if you are the holder of such information and you do not make use of it, then the cause of action of misappropriation can't grow. If Mr. Irwin had sat on the knowledge that was in his head for five years after leaving and then later had decided to design a laser based upon this, I would submit that the cause of action shouldn't be accruing until photomedicine. . . Arguably, that could go on for decades. Until and unless he uses it. So if he has it in his head and he waits 25 years, he says, you know, I've been thinking about this, but I'm going to go do it right now. From your perspective, there's no misappropriation until that point? I would say if there's a suspicion of it, you have to bring a claim. If there is a determination that it's premature . . . You obviously had a suspicion because you brought a claim. That's right. And why wasn't that enough to trigger under the California Civil Code the statute of limitations? I think it did. The question is whether or not, by virtue of the fact that the representation was made that there was no misappropriation at all, that to the extent that there was a claim predicated on that suspicion, that claim turned out to have been premature. It was no longer . . . You treat that as a distinct cause of action. It ended, but there's always the possibility of another one floating out there. I think it would be unfair to treat the accrual of a cause of action, the accrual as occurring, if in fact there has been no trade secret misappropriation at all, no use of it. Arguably, you could bring . . . If I knew the formula for Coke, because my father gave it to me because he worked there 40 years ago, and next year I go into the business of manufacturing Coke, you'd say that's when the cause of action, if any, exists with accrual. If you had a duty not to disclose that information . . . My father's still living, and he went into the business. How's that? Yeah, there's . . . Perhaps. Okay. Perhaps. The second argument is, let's assume for the sake of argument that it did accrue and that the cause of action is a unitary cause of action, and you only get one shot at it, and that's it. And in that situation, that's where principles of equitable tolling and estoppel come into play. I don't think it's . . . It's not disputed in the record that Raw Medical was maintaining that it had not completed its laser yet. What . . . I mean, they characterize . . . You know, they characterize as a voluntary withdrawal of this claim. But yes, I mean, you know, if there's no . . . Because there's no laser, there's no box, there's . . . The question of whether or not, based upon that representation, there should be tolling, if, lo and behold, it turns out a few years down the road, when you get your hands on one of the lasers in the reverse engineering, you find out, lo and behold, it is, in fact, your laser that they've stolen, in that situation, those principles of equitable tolling or equitable estoppel or any of these, excuse me, any of these principles that were tolled in the statute. I have trouble with this equitable tolling, equitable estoppel, or maybe judicial estoppel. I mean, it's a tricky one because if you truly do have a misappropriation claim in your state court suit, they say, I didn't misappropriate. Of course, that's what defendants always say. They say, no, you're wrong. I didn't do it. Let's go to trial. And you back off and you decide you're not going to go to trial. And then you come in later, and two years later, three years later, you bring, for my hypothetical, the same suit. The fact that they said, no, I don't think I can hold that against them. I think it was your job to go forward with the misappropriation claim you then had. I think, Your Honor, if all they had said was, so we didn't do it, that would be one thing. But they're doing more than that. They're saying, we really didn't do it. Well, there's no box. There's no laser. There are no designs. It's more than just a denial of liability, which, of course, I mean, routinely happens in cases. This is, you've got up to try to prove your case with. You've got no box, no laser, no nothing. So it's not just we aren't, we didn't do it. We aren't going to do it. We don't have anything yet from which you could ostensibly prove misappropriation. And your misappropriation claim then and now is he had the information legitimately in his head because of his job when he was working for you guys. That's right. And so given that he had the information in his head legitimately, we're not talking misappropriation in the sense of taking because he had it legitimately. That's right. So the only way he can misappropriate with respect to the information that's legitimately in his head is when he discloses it to others within his company. Either discloses it or actually sits down and starts making the laser from the information that's in his head. Now, it's entirely possible, of course, that he disclosed this the day he walks into raw medical. It is. It is possible. And that would have been a misappropriation the day he discloses it. It would have. Yes, it would. But but by virtue of saying that there is is no box yet and we're not going to have the design of this thing completed for X amount of time. And we don't know what we don't how we're going to design this thing. Under those circumstances where I'm just approving misappropriation going to be impossible essentially for what is in his head. I would submit that it is unfair for raw medical to come back years later and say, well, wait a minute. Despite what we said about the fact that there's no laser yet. Now that you've got the laser and you find out, in fact, based upon your allegations that I did lift this from you guys, that you're too late. That seems to be unfair. And that was the argument that was made by trial counsel to the district judge at the you know, at the hearing on this matter, that it was. I don't know if it was characterized specifically as judicial establishment, but it was the argument was made in the original lawsuit that this thing didn't exist yet. So in the one case, the one we heard previously, you're saying that Mr. Irwin claimed that not only was there a laser, but it was FDA approved. In this case, you're saying he says there's a laser. Well, in both actually in both cases, in the original case in 2003, he said there's no laser. That didn't stop him from going to the dermatologist convention and representing that he had a laser and it had been approved. That was the basis of lawsuit number one, which could have been the license. So. So he says. But of course, you've got the declaration of Terry Fuller, the expert in our case that says there's no lineage between those two lasers at all. So, you know, once you've made this representation that there is no laser, you don't produce anything in discovery. And then later, once photometrics got his hands on one of the lasers and reverse engineered it and found out that it, in fact, had been appropriated, we brought the claim. We believe that it would be appropriate to have tolling apply in that case, even to the extent that the accrual dated already. Why don't we hear from them? And then I think we're going to hear from you again. Wonderful. Thank you. Good afternoon. My name is Alan Brubaker. I represent Raw Medical Systems and Dean Irwin. May it please the court. I'd like to begin addressing two matters. A pattern of practice by photometrics and the issues raised by photometrics in reply. Judge Fletcher, you comment on the equitable estoppel claim. Let me touch that first. There was never an allegation of fraudulent concealment in any of the litigation as alleged by photometrics. There was, as suggested, simply a denial of the allegation of taking. Was there an affirmative statement that there was no laser yet? It was still being worked on. No, Your Honor, there was not. How do we know that? He says there was. You say there's not. How do I know? You may be able to find it in the record, and I'll ask my colleague to. But you're saying there's no statement. That's hard. I've got to read the whole thing. Pardon me? You say there's nothing in there, and for me to be sure there's nothing in there, I've got to read the whole thing. You can't point me to a particular page and say it's not on that page and therefore it's not in there. Yes, I apologize. We believe there was never an allegation that there was no laser. That's my representation to the court. I'd like to. His representation is to the contrary. Okay, I got it. Presumably he'll be looking and point us to a page and we'll see. I'd like to touch something that Judge Smith asked of counsel on the issue of the statute of limitations in California on misappropriation. The California statute touching acquisition, disclosure, or use. I think we got hung up on use in the argument that was made by counsel for photometrics. The Cadence case, 2002 California Supreme Court that we've cited, is a claim for misappropriation. The trade secret arises only one time when the trade secret is taken or is suspected to have been taken. And as the court has recalled, the assertion was that there was a disk in the parking lot and that he returned to the office and took files. We contend that that statute of limitation accrues at that date. And a continuing misappropriation, use, or disclosure at the office by one of the hypotheticals constitutes simply an augmentation of the taking which occurred on a specific day. I assume that somebody who has a lot of trade secrets in his head can disclose trade secret number one in April, disclose trade secret number one in December, disclose trade secret number three the following year. And as to each trade secret, we've got a separate violation? We may, depending upon how the secret was acquired. Well, let's assume that the secrets were acquired legitimately. Legitimately acquired and someone suspects a wrongdoing, a taking, when the individual departs the company. No, no. He departs the company. And for purposes of my hypothetical, he's got all these trade secrets in his head that he acquired legitimately. And then he's in a new company. In Syria, over the space of several years, he disclosed trade secret number one, number two, number three. I assume that if trade secret disclosure number one and number two are outside the statute of limitations, disclosure of trade secret number three, there's still a cause of action for that. Yes, I believe there would be a separate accrual then for each of these trade secrets that have been determined to have been disclosed or used. And that would cause the accrual of the statute for that particular misappropriation. In this case, this is kind of tricky because there's some ground to think that he misappropriated by taking a file, although that may be disputed. And there's some ground to think that he may have misappropriated by disclosing, although that's going to be disputed. And there's some ground to think that he may have done it more than once in Syria. I mean, I don't know. So how can we simply, based upon the filing of the complaint in the state law case, decide that the statute of limitations has been told? I believe that the courts addressing this issue have focused on an answer, which is suspicion of wrongdoing. One can't wait until the acquisition is discovered or the use or development is discovered. I think that's the reason the courts have defaulted to focus on a suspicion. One must look into the dispute. I have trade secrets. I leave the company. I wait five years. Now, my possession of the trade secrets is not lawful because I had them when I was with the company. I waited five years. I start to use them at that point. Too late? I think we've got a different set of facts because there's no suspicion of taking. There's more than a suspicion of taking. As soon as that guy walks out the door, I am really suspicious. We've got a very different circumstance in California with inevitable disclosure of ideas in one's head. Those may not be actionable. Let me tell you, I have an enormous problem with the argument you're making, and part of it starts when I look at ER 164 and 165, or 54 and 55. I've got to get reading glasses. Anyway, it's a declaration of Mr. Irwin. He talks about how RAA, I guess it's the sun god, RAA intends to manufacture and sell laser systems. Contrary to the allegations, RAA will not use the design or alleged proprietary technology of Photomedics. Instead, they've got licenses, Surgilite, so on and so forth. RAA is not presently manufacturing laser systems for sale and so on and so forth. Also not taking any orders, not placed any orders, blah, blah. All the things you just told us there was nothing in the record seem to me to be in Mr. Irwin's declaration. Well, Your Honor, I apologize. I had focused. And frankly, this is entirely consistent with the argument that's being made by Photomedics. That is, they think they're suspicious of all get-out. They come in and try to stop the misappropriation of what they suspect to be misappropriation at the time. RAA says, not us. We're not developing anything. We haven't gotten any system. We've licensed with Surgilite and we're going to use that. Okay. So Photomedics doesn't have something to point at at that time. It drops the lawsuit until it actually turns out that the laser in their eyes, I don't know, but in their eyes does in fact utilize the trade secrets of Photomedics. Now tell me why on those facts you should prevail today. We're concerned, given the big-picture history of five-plus years of litigation with Photomedics, that the piecemeal, selective, tactical presentation of these various issues to various courts has created terrific difficulty. Specifically, Photomedics filed a state court action within very short time alleging misappropriation. That case was discovered for a year, was on the eve of trial, and was voluntarily dismissed, walked away from by Photomedics. You won on three causes of action. We did, yes, in summary fashion. Yes. They then turn around days later and file a federal action, which is the first federal lawsuit choosing not to allege misappropriation at that time. And we believe tactically waiting for some other time, waiting for the FDA, specifically we believe to act, can then choose after we claim they don't have a license for the manufacture of their device to cross-claim in the summer of 2006 regarding a matter of misappropriation that they have suspected occurred in the summer of 2002. That, we believe, causes the statute of limitation in their cross-claim in the second federal action to fail on the basis of the statute of limitations. And in similar fashion, their claims for Lanham Act violations, 17500 violations, which we contend are three-year statutes, to be barred. We may be able to clear the underbrush. The 17200, is that a four-year? It is a four-year statute. So that one's okay then? Yes. It's not okay in the cross-claim, Your Honor. It was properly dismissed by the district court because of the suspicion of misappropriation of the trade secret on July 26, 2006. The foundation of the 17200 is the 17500. I understand that. What role does the diskette play in all of this? Is there any information in the record that indicates that Mr. Irwin knew he had dropped this diskette? I'm not aware of any such indication in the record. Is there any indication of what photometrics found on the diskette? I don't know the answer to the question, Your Honor. Okay. So basically for purposes of analyzing what was acquired, suspicion and so on, is that just basically a non-issue at this point? We should look at it as if it had never been discovered? We don't believe it's a non-issue because of the suspicion. I mean, if nobody knows what's on it, what difference does it make? The assertion was also that he returned to the office and took files from the office. Okay. Well, that's a separate issue, but I'm talking about in terms of the diskette, since nobody seems to know what was on it, should that have no bearing whatsoever on our consideration? May I ask a question? Sure. My colleague advises that in the temporary restraining order proceedings, which were pursued by photometrics, there was some discovery taken on the temporary restraining order and then they walked away from the temporary restraining order request, that there was an indication that there was confidential information on the disk and that they feared confidential information had been taken in the files. So that was alleged by photometrics? Yes. Is that correct? That's what I understand. In the TRO proceedings in the state court. Again, I'd just like to take a moment to step back big picture and look at the party that has notice of rights assumably violated, concern about it, suspicion about it, and the California law, and I believe the federal law, that says that party must act. This creates a stark reality in the law implicating claim splitting as a bar, in addition to bar of the statute of limitations. And we raised to the district court the concern about claim splitting, that this was being brought and withdrawn, being advanced and taken back, and then being advanced again. The photometrics pattern is seen in the original state action, which they retreat from on the eve of trial, and their withdrawal from the TRO, the claims that are in the case. When the photometrics moved to join the two federal actions, what position did your client take? Your Honor, we were well into discovery on the eve of a summary judgment hearing by Judge Lorenz. Our position, I apologize. I hear an answer to the question someplace in there. Our position was that it was untimely, inappropriate for that reason, to consolidate those actions. So you didn't seem to be concerned about the splitting in that context. It makes the claim of claim splitting not very persuasive. Well, there's lots of authority that has come about in development after the reply brief was filed by photometrics that suggests the importance of this reality is the fact that the cases aren't consolidated does not speak to whether they are appropriately or whether they are actually claims that are split. Let me make sure I understand. Which claims are you saying were impermissibly split? Each of these. The Lanham Act, 17-5. I want to write this down. Lanham Act, okay. 17-5. 17-5. The misappropriation claim. Misapp. And 17-200. 17-200, okay. Well, the only splitting that's possible with respect to Lanham Act is between the two federal cases because, of course, there was no Lanham Act in the state court case, correct? Correct. And no misappropriation claim in the Fed one. Right. So I want to go one by one. So Lanham Act, you've got a split argument. It can only be that it was impermissibly split between the federal and the state. Well, excuse me, between the federal case one and federal case two. Correct. And, of course, they bring a Lanham Act case in the first one. Yes. And then they assert a Lanham Act claim that looks pretty much like the same one in the second one, and they want to consolidate, and you say no. Okay, I got it. Is that incorrect? For other reasons, but because of the timing of where we were in the federal one case to not inject additional or similar claims. It sounds as though they asserted essentially the same Lanham Act claim in both cases. We submit they did. So I guess you don't care whether you win the Lanham Act case in one or the other or stay it the other way around. You don't care whether you lose it in one or the other. It's a matter of indifference. You have a Lanham Act case against you. In Fed one, and, of course, the effort is then to split it by bringing it again in Fed two by way of cost claim, which we contend. Whether you win it or you lose it in Fed one or Fed two is the same. The same consequence, correct? Yes. I believe there are allegations in Fed one or Fed two. So I think the splitting claim on that makes no difference. I mean, you win it or you lose it, whether it's Fed one or Fed two. We believe it's properly dismissed as an element of the cost claim. Okay. Now, as to the 17500, that's false advertising. Now, that was done in Fed one. Was there false advertising in the state court? I don't think so. Was there? I believe there was, Your Honor. One of the cases I've got is breach of contract, intentional interference with contract, conversion, misappropriation, trade secrets, and unfair competition. Was there a false advertising in the last one, unfair competition, or was it just a straight 17200? I believe it was a false advertising claim in the state court action. That's my question. Yes, I believe there was. My colleague is advising there was none. I think I'm getting a no. So 17500, the only splitting is as between the two federal cases? Correct. Misappropriation, okay, that was a claim that was originally asserted in the state and was withdrawn based upon your basically contention. Listen, there's no such thing. And they say, okay, either I'm going to lose it or I'll bring it later. For whatever set of reasons, it's withdrawn. So there's a possible claim-splitting argument as between federal and state on that one. Right. They walked away two days before trial in the state court action on that claim. And as to 1700, there's a possible split on that one between the state and the federal. Yes. Okay. Now I got that straight. Okay. We believe fraud is the analogous state statute for the 17500 claim, and that this Court's holding in the general formulas case and the provision of California Civil Code Section 338A and D, the default statute, when no statute is provided for, set up the reality that those claims are barred by the statute of limitations in the cross-claim in Fed 2, filed more than three years after the causes of action accrued. FOTAMEDICS, I'll point out, cites to the Court no persuasive authority supporting its claim of a four-year statute of limitations for either of those causes of action applying. Okay. Thank you. Thank you. Pardon me for using the word. If you can stand it, we can stand it. Would you like a response? If you can stand it, we're all right. I'm good. So that I don't wear out my welcome. On the claim-splitting issue, if it were just a matter of untimeliness, that would be one thing. But, of course, that wasn't the only opposition to the consolidation. The other aspect of the opposition to the motion to consolidate was a substantive one. It was these claims are completely different. The causes of action asserted in the second Federal action are wholly different than the causes of action in the first one. Having asserted that claim, they are stopped from arguing otherwise now, and to the extent that the Court's decision was predicated upon that, they can't assert a claim-splitting argument now anyway. Okay. Anything else? No. Thank you, Your Honors. Okay. Thanks very much. The case of raw medical versus photomedics now submitted for decision. It's been a long morning and the afternoon. We're now in adjournment. And we thank you for your arguments. Thank you.
judges: Fletcher W. , Clifton, Smith M.